## FREEMAN v. STATE BOARD OF MEDICAL EXAMINERS.

No. 5854.   Opinion Filed December 7, 1915.

Rehearing Denied January 11, 1916.

(154 Pac. 56.)

1.   PHYSICIANS AND SURGEONS—Revocation of License—Proceedings—Parties. The state is not a necessary party to a proceeding before the State Board of Medical Examiners to revoke the license of a physician.

2.   SAME—"Un-Professional Conduct"—"Incurable Disease." In the second clause of section 6905, Rev. Laws 1910, defining "unprofessional conduct" of a physician as " * * * the obtaining of any fee on the assurance that an incurable disease can be permanently cured," the words "incurable disease" mean any disease which has reached an incurable stage in the patient afflicted therewith, according to the then general state of knowledge of the medical profession.

3.   SAME—Validity of Statute. The second clause of section 6905, Rev. Laws 1910, is valid, and defines an offense against professional conduct on the part of physicians.

4.   SAME—Proceedings to Revoke License—Complaint. The State Board of Medical Examiners in a proceeding before it to revoke the license of a physician acts in an administrative, and not a judicial capacity, and the same strictness in pleadings and practice is not required before it as before a judicial tribunal. It is sufficient if the accused is informed by the complaint of the wrong charged against him and the particular instances of its perpetration charged, and has an opportunity to defend against proof of such charges, and the proceedings are free from prejudice, fraud, or oppression.

5.   SAME—Evidence—Advertisement. An advertisement published by a physician held properly admitted in evidence against him upon a charge of obtaining a fee on the assurance that an incurable disease can be permanently cured by him, as tending to prove the assurance of permanent cure where such assurance is denied by the physician.

6.   APPEAL AND ERROR—Harmless Error—Findings of Fact—Evidence—It is error for the court to make a finding of fact upon a motion upon which all evidence was excluded, but, where the

findings of the court are supported by the evidence, and are sufficient to sustain the judgment of the court, such error is not so prejudicial as to warrant a reversal.

7. **PHYSICIANS AND SURGEONS—Revocation of License—Sufficiency of Evidence.** Evidence considered, and **held** to sustain the judgment of the court.

(Syllabus by Rummons, C.)

*Error from District Court, Bryan County;*
*Jesse M. Hatchett, Judge.*

*Certiorari* by R. W. Freeman against the State Board of Medical Examiners. Writ quashed, and plaintiff brings error. Affirmed.

*Hatchett & Ferguson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *C. W. King,* Asst. Atty. Gen., for defendant in error.

Opinion by RUMMONS, C. The questions involved in this appeal raised in the brief of plaintiff in error necessary to be considered consist of four propositions: First. Is the state a necessary party to this proceeding? Second. Is the clause in section 6905, Rev. Laws 1910, defining "unprofessional" conduct of a physician as follows: "Second. The obtaining of any fee on the assurance that an incurable disease can be permanently cured" —void and of no effect? Third. Whether or not the proceedings before the State Board of Medical Examiners and the district court were regular and free from prejudicial error? Fourth. Was the evidence sufficient to support the judgment of the trial court?

The plaintiff in error, a duly licensed physician, was informed against before the State Board of Medical Examiners upon a charge of being guilty of unprofessional conduct. He was thereafter duly cited to answer the complaint, and did answer the same, denying specifically

the acts complained of.   Thereafter, at one of its regular quarterly meetings, the state board heard the complaint, and, after plaintiff in error had unsuccessfully moved to dismiss the complaint, demurred thereto, and moved to strike, proceeded to take testimony upon the complaint. The state board found against plaintiff in error, and ordered that his license as a physician be revoked.   Thereupon plaintiff in ·error filed his petition in the district court of Bryan county praying a writ of *certiorari* to issue to the State Board of Medical Examiners to review their action upon the complaint aforesaid.   ·The writ was issued, and thereafter the cause came on before the district court of Bryan county, and a trial was had to the court, without the intervention of a jury, upon the complaint filed with the State Board of Medical Examiners and the answer of plaintiff in error thereto.   The trial court found against plaintiff in error, and quashed the writ of *certiorari* and affirmed the action of the State Board of Medical Examiners.

Plaintiff in error insists that this proceeding should have been dismissed for the reason that the State of Oklahoma is a necessary party to a proceeding like this. We cannot agree with this contention of plaintiff in error. The case of *Gulley v. Territory of Oklahoma,* 19 Okla. 187, 91 Pac. 1037, does not sustain the contention of the plaintiff in error, because that case was begun and tried under the laws then in force in the Territory of Oklahoma, proving that the district court should, upon the complaint of any member of the Territorial Board of Health, have power to cancel the license of any physician found guilty, etc.   Under this statute the proceedings to revoke the license of a physician were judicial, had to be commenced upon the complaint of a member of the Terri-

torial Board of Health, and were thus officially controlled, and the court rightfully held the state to be a proper party in such a proceeding. The case of *State v. Estes*, 34 Or. 196, 51 Pac. 77, 52 Pac. 571, 55 Pac. 25, cited by plaintiff in error, also fails to sustain the contention of plaintiff in error. In that case it was held that the state was a proper party in a proceeding to revoke the license of a physician, and that, notice of appeal having been served upon the state, it need not be served upon the state board.

Our statutes (sections 6901, 1903, and 6904, Rev. Laws 1910) provide the procedure for revoking the license of a physician. The proceeding to revoke the license may be commenced by any one upon a sworn complaint; and thereupon it is the duty of the State Board of Medical Examiners to issue citation to the party complained of to answer within 20 days after the filing of the complaint, and to proceed thereafter to try and determine the issues raised.

Section 6913, Rev. Laws 1910, further provides:

"Any person who has been aggrieved by any act, rule or regulation of said board shall have his right of action to have such issue tried in the district court of the county in which some member of the board shall reside."

It will be seen that under no provision of the statute does the State of Oklahoma or any official thereof have exclusive authority to institute proceedings for the revocation of the license of a physician, nor is there any authority in the statute by which the State of Oklahoma can control such proceedings. The proceeding may be instituted by any one, and the State of Oklahoma or the Attorney General would be wholly without authority to dismiss such proceeding or cause it to be discontinued.

Therefore we are of the opinion that, while the State of Oklahoma, through its Attorney General, might appropriately institute such a proceeding, yet it is not such a necessary party to the proceedings as to require it to be in court before the matter could be proceeded with.

Is the provision of section 6905, Rev. Laws 1910, above quoted void and of no effect? Upon this proposition counsel for plaintiff in error cite the case of *Graeb v. State Board of Medical Examiners*, 55 Colo. 523, 139 Pac. 1099, 47 L. R. A. (N. S.) 1063. The Colorado statute provides as a ground for revoking the license of a physician "* * * the obtaining of a fee on the representation that a manifestly incurable disease can be permanently cured." Section 6068, Rev. St. 1908. Our own statute makes the ground for the revocation of license "* * * the obtaining of any fee on the assurance that an incurable disease can be permanently cured." The two statutes are identical, except, for the word "manifestly" used in the Colorado statute. A majoriy of the Colorado Supreme Court in the case cited held that the statute quoted was too indefinite and uncertain to be valid. The court, in passing upon this question, uses the following language:

"The position of the board is very clearly stated in this respect in their brief in *Hamilton v. Board* (Colo.) 148 Pac. 1145, to which brief we are referred and asked to consider in connection with this case. This is as follows: 'If the question were in controversy in this case as to whether the words "manifestly incurable disease" is so indefinite as to be unenforceable, we would welcome the issue, but we hesitate to burden this court with a vast number of authorities on a point not in issue. Suffice it to say that the words last quoted do not refer to any diseases *per se*, but to a condition of the patient suffering

from almost any disease. It is true that consumption is not "a manifestly incurable disease" in itself, but an invalid suffering from consumption may have reached a stage in which the disease is "manifestly incurable." Under our statute, a physician might lawfully take money for representing that he could cure one case of consumption and at the same time be committing an offense for taking money under a similar representation as to another case of the same disease which had manifestly gone beyond the curable stage.' This argument is also advanced in this case, but not so clearly stated as in the above quotation. This position is not tenable. If the statute had intended a manifestly incurable person, or a manifestly incurable diseased condition, it would doubtless have so recited. But the language is a 'manifestly incurable disease.' Clearly the descriptive words 'manifestly' and 'incurable' apply to the disease, and not to the person or the condition of the person afflicted with the disease. This is likewise the charge in the complaint; for it alleges 'that a manifestly incurable disease could be cured * * * the disease known as consumption.' Counsel for the board have cited no authority justifying such construction of the language used in the statute as that for which they contend, and we do not see how language so clear and explicit can be so tortured. If there is no disease known and understood to be manifestly incurable, then the statute states no offense in that particular, and the board was without jurisdiction in the premises."

Mr. Justice Gabbert, writing the dissenting opinion for the minority of the court, uses the following language:

"When is a disease manifestly incurable? Clearly when it is evident it has reached the stage that it cannot be made to yield to medical treatment. That is what laymen, as well as the medical profession, understand from the expression 'a manifestly incurabe disease.' The intent of the law is to be considered in its interpretation,

and, in ascertaining such intent, the evil against which it is directed must be considered. It is common knowledge that one suffering from disease can easily and readily be imposed upon by those who, by reason of the fact that they have obtained a license to practice medicine, are presumed to possess that degree of skill in the treatment of disease which will enable them to accomplish that which they represent they can. The object of the statute is to prevent what would be nothing less than extortion by members of the medical profession, obtaining money from persons or the relatives and friends of those suffering from disease by promising a cure when it is apparent that the patient is beyond the reach of medical science. Such being the object of the statute, the words employed to express it should not be given such a narrow construction as will result in destroying its beneficent purpose, when from such language, and the general understanding of what it means, it is apparent that the Legislature intended to prevent the helpless ill being imposed upon by the promises of a cure when it was evident their condition was such that it could not be accomplished."

This case is the only one cited by counsel, and the only one which we have been able to find, which passes directly upon the point raised by plaintiff in error. The majority opinion undoubtedly sustains the contention of plaintiff in error. While the Colorado statute uses the words "manifestly incurable," instead of the word "incurable" as in our statute, we do not regard this as affecting the applicability of the majority opinion of the Colorado court, since the court there holds that the words "manifestly" and "incurable" must be taken as applicable to the disease *per se,* and not to the condition of the patient suffering with the disease at the time his treatment is undertaken by the physician. The record in the case at bar discloses that the diseases which the plaintiff in error is charged with having undertaken to treat upon

assurance of effecting a permanent cure were not considered by the witnesses for the complainant to be incurable *per se;* in fact, it may be doubted if the medical profession recognizes any disease as incurable *per se*— that is, beyond the reach of medical skill at any stage in the progress of the disease. We think, however, that the majority opinion of the Colorado court does not rightly construe the statute, and we prefer to follow the dissenting opinion in that case, as we think the dissenting opinion correctly interprets the statute in question, and that such interpretation is equally applicable to our own statute.

To sustain the contention of the plaintiff in error upon this proposition would be to nullify that section of our statute, and to hold that the Legislature, adopting it, did a vain and useless thing. The universal rule of statutory construction is that, when the intent of the Legislature can be determined from the statute, it is the duty of the courts to follow and enforce such intent. In construing statutes consideration is always given to the mischief to be corrected and the remedy to be afforded. As we regard this section of our statute, we think that it is not aimed at any unethical practices of physicians as interpreted by the medical fraternity, but was aimed to prevent acts on the part of physicians which are universally regarded as immoral and against good conscience, not only by the medical profession, but by laymen as well, and for which under the style of obtaining money under false pretenses our Criminal Code has provided the penalties of the law. The gist of the offense of which it is claimed plaintiff in error was guilty is duping the credulous and taking advantage of the afflicted by taking money from them with an assurance that they can be perma-

nently cured when, in fact, their condition is incurable according to the general state of knowledge of the medical profession at the time. The word "incurable" is defined:

"Not curable; beyond the power or skill of medicine." 22 Cyc. 74. "Not susceptible of cure; applied to both patients and disease." (Dunglison's Medical Dictionary.)

Section 2914, Rev. Laws 1910, provides:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears."

Section 4642, Rev. Laws 1910, provides:

"* * * But the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any * * * statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

Under these definitions and under the rules of construction laid down as above in our statutes we must conclude that the word "incurable," in the section of the statute in question, is to be interpreted in its ordinary acceptation, and that the Legislature, in adopting that section, did not intend to do a useless thing, but intended the statute to be enforced in accordance with an interpretation based upon the ordinary understanding of the words used, both by laymen and physicians. In that view of the case we are clearly of the opinion that the words "incurable disease" in the section of the statute in question apply to the state of the disease which a patient may have at the time the treatment of it is undertaken by the physician, and that, if a physician undertakes to treat a

patient who is suffering from a disease which has in its progress reached an incurable state according to the then general state of knowledge of the medical profession, and accepts a fee from the patient upon the assurance that he can effect a permanent cure of such disease, he would be guilty of unprofessional conduct as defined in that section of our statute.

Plaintiff in error complains of irregularity and error in the proceedings before the State Board of Medical Examiners and in the trial before the district court. He particularly complains of the sufficiency of the complaint filed before the state board. It is practically held unanimously by all the courts that such boards, in proceedings similar to the one at bar, do not act judicially, and are not judicial bodies, but that their action is merely administrative. It is also held that it is within the police power of the state to grant such powers as are sought to be exercised in this case to such boards as a part of the administrative arm of the government, and to provide for summary proceedings to be taken by such boards in cases similar to the one at bar. It is also held that it is not necessary in a trial under such a complaint that the proceedings shall be conducted with that degree of exactness which is required in trials before ordinary tribunals of justice, and that a complaint filed before a state board of health for the purpose of revoking the license of a physician is sufficient if it informs the accused not only of the nature of the wrong charged, but of the particular instances of its alleged perpetration. *Munk v. Frink*, 81 Neb. 631, 116 N. W. 525, 17 L. R. A. (N. S.) 439; *Meffert v. Packer*, 66 Kan. 710, 72 Pac. 247, 1 L. R. A. (N. S.) 811, affirmed, 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350; *State Medical Board v. McCrary*, 95 Ark.

511, 130 S. W. 544, 30 L. R. A. (N. S.) 783, Ann. Cas. 1912A, 631; *State Board of Health v. Roy,* 22 R. I. 538, 48 Atl. 802; *State v. Chapman,* 34 Minn. 387, 26 N. W. 123; *State v. Feller,* 34 Minn. 391, 26 N. W. 125.

In view of the fact that the controversy is narrowed down to the one charge that plaintiff in error accepted a fee for the treatment of an incurable disease with the assurance that he could effect a permanent cure, we are of the opinion that the paragraph of the complaint which charges plaintiff in error with that offense against professional conduct is sufficient, since it advises him of the particular diseases the treatment of which he is charged with having undertaken, especially as plaintiff in error did not seek to have these charges made more definite and certain.

The plaintiff in error complains of the admission in evidence by the trial court of an advertisement which is admitted to have been published by plaintiff in error. Plaintiff in error says that he was not charged with making grossly improbable statements, calculated to mislead the public, in advertising his business. While this is true, we do not think the court erred in the admission of this advertisement, since it tended in some degree to throw light upon a question properly before the court; *i. e.,* whether or not plaintiff in error gave assurances of effecting permanent cures of incurable diseases.

Plaintiff further complains that the trial court in its findings in this cause found plaintiff in error guilty of a charge upon which the trial court, upon the objection of plaintiff in error, had excluded all evidence. The record seems to bear out the contention of plaintiff in error in this particular. While this is error, yet, as we have con-

cluded that the judgment of the trial court was right, the fact that he may have included in his findings a conclusion which was not supported by the evidence, since he did make findings that are supported by the evidence and which sustain the judgment, will not justify us in disturbing the judgment of the court therefor.

Plaintiff in error further contends that the findings of the court are not supported by sufficient evidence. We have examined the record upon the propositions complained of by plaintiff in error, and we find sufficient evidence to sustain the findings of the court as to the incurable nature of the diseases undertaken to be treated by plaintiff in error, as to his assurances of effecting a permanent cure, and as to his accepting a fee therefor. It is urged by plaintiff in error that the written guaranty which was introduced in evidence, and which is as follows:

"ABSOLUTE GUARANTEE.

"———, Okla., ———, 191—.

"I, R. W. Freeman, M. D., party of the first part, do hereby agree to refund all moneys paid to me by H. S. Hawkins, party of the second part, should he fail to receive a complete cure by my treatment.

"R. W. FREEMAN.

"I, S. H. Hawkins, party of the second part, do hereby agree to follow the directions given by R. W. Freeman, M. D., party of the first part, through a period of time sufficient as deemed by him to effect a complete cure. Should I fail to follow the directions as given by him, then I agree that this agreement becomes null and void.

"H. S. HAWKINS."

—is not a guaranty of a cure, but only a guaranty to refund the fee in the event the treatment prove unsuccess-

ful. We consider this contract to be a mere subterfuge, and have no doubt that it was drawn for the very purpose of protecting plaintiff in error in a case like this. But a reading of the entire contract shows that it holds out to the patient an assurance of a permanent cure. And, aside from this contract, the record contains evidence of assurances of effecting a permanent cure made by plaintiff in error to his patients orally. This evidence was perfectly competent, since this action is not based upon the contract above quoted, and oral evidence tending to prove or disprove the matter at issue was admissible.

We conclude that there is no prejudicial or reversible error in the record, and that the judgment of the court below was right, and should be affirmed.

By the Court: It is so ordered.