Roy A. SMITH, D.D.S., Plaintiff In Error,

v.

STATE of Oklahoma ex rel. BOARD OF GOVERNORS OF the REGISTERED DENTISTS of Oklahoma, Defendant in Error.

No. 38109.

Supreme Court of Oklahoma.

Sept. 30, 1958.

Hickman & Hickman, Tulsa, for plaintiff in error.

Tom Harley, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Roy A. Smith commenced this action by filing in this court, as provided by Tit. 59 O.S.1955 Supp. sec. 278, his petition to review a decision of The Board of Governors of the Registered Dentists of Oklahoma, hereinafter referred to as the "Board", revoking his license to practice dentistry in this State.

The decision was based upon the ground of revocation set forth in the statute, supra, as follows:

"The Board shall have power to revoke the license of a member hereof or suspend a member from the practice or reprove said member upon the following grounds:

- (that he) * * *

"(e) has permitted, directly or indirectly, an unregistered or unlicensed person to practice dentistry and/or dental hygiene *under · his direction;* * * *." (Emphasis ours).

Section 271 of the same Title reads, in part, as follows:

"Any person shall be regarded as practicing dentistry within the meaning of this Act who * * *

furnishes, supplies, constructs, reproduces or repairs, or offers to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as plates), bridges or other substitutes for natural teeth to the user or prospective user thereof; * * *."

There was no question from the evidence introduced at the hearing, held before the Board last December, but that one Gilbert Crosby, who operated Crosby's Laboratory in the basement of a building at 1335 East 15th Street, in Tulsa, furnished to one Lawrence Ford, the principal witness in support of the complaint filed with the Board against petitioner, a partial plate or substitute for natural teeth. The crucial question, however, was whether he did this "under (the) direction" of the petitioner, within the meaning of that term as used in the first quoted section of the statute, supra.

The undisputed evidence showed, among other things, that petitioner is sixty-four years of age and has been a practicing dentist in Oklahoma since 1916, but that he had only recently moved from Holdenville to Tulsa, where, in April of last year, he opened a dental office in the above-mentioned building, referred to as the Colonial Inn building; that the building which, besides the basement floor, has a ground, or "street level", floor with an entry room or foyer, reception room and seven private office rooms, had previously been rented from the individual who owned it, to South Investment Company, under a long term lease, to be sublet as a clinic, which subsequently went out of business; that, thereafter South Investment Company initially leased the entire building to the laboratory operator, Crosby; that thereafter, in March, 1957, Crosby sublet five of the rooms on the hall leading from the reception room

down the center of the building's street floor, to a physician named Dr. Walden; that when, on April 22, 1957, the petitioner rented, for his office, a room at the rear end of the hall, near the stairway leading to the basement, he required South Investment Company to obtain a release, as to that room, of the previous lease to Crosby, so that petitioner could rent the room directly from the investment company; that by mutual arrangement between the interested parties, all three of the building's tenants, used the two rooms nearest the front, or Fifteenth Street, entrance of the building as a common, or mutual, foyer and reception room, there being a telephone and desk there.

It further appeared that the principal witness, Ford, is a Tinker Field employee, residing in Oklahoma City; that he became a participant in the matter when Mr. Harley, the Board's attorney, contacted him and engaged him to go to Tulsa and purchase a lower partial plate for himself at the Crosby Laboratory; that he was paid $25 for each trip he made to Tulsa on said mission, and was furnished $100 to pay for the plate; that on the initial trip he, in accord with instructions, merely telephoned the Crosby Laboratory for an appointment to have an "impression" made for the plate; that a man, whom he was unable to identify, answered the phone and told him to come there at 1:00 o'clock p. m.; that when he went to the building to keep the appointment he met Crosby in the reception room, but didn't see petitioner, or anyone else. Ford testified, in substance, that then Crosby escorted him into another room, where he took the impression; that when Harley took him back to Tulsa to get the plate, about two weeks later; or July 10, a Mr. Dempter went into the reception room with him and Dr. Smith was sitting at the desk in the next room, talking to a lady, and, according to Ford's testimony, Smith told the witness "that they had a card from New York, or wherever they sent them (the teeth or partial plate) that they were being shipped and that they should be in on the 10:10 mail." Ford

testified further that: " * * * we (apparently referring to him and Dempter) told him we was goin' to a little tavern there close * * * it's called the Friendly Tavern, and he said he would call us when the mail came and tell us when to come back." Ford further testified, in substance, that petitioner telephoned him at 10:45 and told him that the teeth had come in, that Crosby was finishing them, and to come back at 3:00 o'clock and they would probably be ready. From the witness' testimony, it may be deduced that he and Dempter returned to the clinic building at the appointed time and waited a few minutes in the reception room in which the petitioner and a lady were sitting; that then Crosby came up from his laboratory in the basement and invited them (Ford and Dempter) down there, where they, along with some woman, drank some whiskey, and Crosby " * * * got the teeth ready * * * ". Ford further testified that thereafter Crosby made "two or three trips back upstairs * * * " and after he had come back to the basement the last time, he then accompanied the witness upstairs to petitioner's office room, where the witness sat in the petitioner's dental chair, while Crosby fitted the partial plate in his mouth. Ford further testified that by the time this trip to his office room occurred, the petitioner had left the building.

When the petitioner was on the witness stand, he testified, among other things, in substance, that he had no connection whatsoever with Crosby and his laboratory business and that he sent all orders for dentures for his patients to other laboratories. Petitioner also denied that he had ascertained that Crosby was to get a partial plate in the mail on the day the witness Ford had testified they had had two conversations about Ford's plate coming through the mail. The petitioner also denied that he had anything to do with Crosby's mail. He admitted that he was in the common reception room the day Ford testified he and Dempter were there and that there was also a lady there, who (as he recalled) was a patient of Dr. Wal-

den; but, when asked if he remembered any conversation he and Ford had, he replied: "None whatever." Petitioner further testified that when he left his office room, its door was unlocked; but, when asked if he knew of any act "with reference to the Dental Science" that Crosby did "under his direction", he replied in the negative. Petitioner further testified that he "didn't like the way things was goin' * * *" in the building, and, in September, 1957, he moved his office to 6420 East Tecumseh Street. Apparently, among other things he did not like, was Crosby's "drinking too much" and coming " * * * up in front * * *".

At the close of the evidence, the Board made no findings of fact as prescribed in Section 278, supra, but merely dictated into the record its order that petitioner's license be revoked.

In his first proposition of error, petitioner asserts that the Board erred in overruling the demurrer to the evidence that was interposed in his behalf at the close of the complainant's evidence. In his other two propositions, he challenges the sufficiency of the evidence to support the Board's decision.

 The Board first argues that since petitioner did not, at the close of all of the evidence, renew his demurrer, he thereby waived all question as to the sufficiency of the evidence and cannot now be heard to urge its insufficiency. In Freeman v. State Board of Medical Examiners, 54 Okl. 531, 154 P. 56, L.R.A.1916D, 436—the only case which the Board cites involving license revocation proceedings—it was held that in proceedings like the present one, the same strictness in pleading and practice is not required as in court actions. And, this seems to be the general rule. See Board of Dental Examiners v. Hedrick, 116 W.Va. 222, 179 S.E. 809, and the cases cited therein; 41 Am.Jur., "Physicians and Surgeons", sec. 61; 70 C.J.S. Physicians and Surgeons § 18. We therefore hold that, despite the petitioner's failure to renew his demurrer, or move for judgment, at the close of all of the evidence, he may still challenge its sufficiency in this appeal.

 Under the argument which pertains to petitioner's last two propositions, he urges that it was incumbent upon the complainant to prove that Crosby's hereinbefore described activities in furnishing Ford the partial plate, were performed "under the direction" of petitioner. At another place, he says: "There is no proof whatsoever that Dr. Smith had any control or right of direction over Crosby." At another place, he argues that the evidence goes no further than tending "to establish that Crosby was engaged in a pursuit entirely free of any control by Dr. Smith." He cites definitions of "direction" set forth in various kinds of cases, all of which are to the effect that the term involves authority to command and/or control; and points out that the evidence in these proceedings wholly failed to establish that the petitioner had any authority to command or control Crosby in his denture-making business. In answer to petitioner's argument, the Board quotes the rule governing this court's review of orders of the State Industrial Commission, to the effect that they will be sustained when there is any competent evidence reasonably tending to support them; and said body is apparently of the opinion that the evidence is sufficient, under such rule, to support its decision. The opinion quotes an editorial headnote appearing in the report of Huntington Dental Society v. Winton, 129 W.Va. 550, 40 S.E. 2d 769, to the effect that a State Dental Board's order revoking a dentist's license to practice will not be disturbed on appeal, "unless it appears that the board has exceeded its powers or committed a mistake of law in reaching its conclusion." It also quotes, as if applicable, a quotation from another case in the federal case of Johnston Seed Co. v. U. S., D.C., 90 F. Supp. 358, 360, in which it was said (referring to the Interstate Commerce Commission in a rate case) that said Commission "may give as much or as little weight to evidence as it seems proper." The majority rule in other states having Boards similar

to the one whose decision is reviewed here, seems to be that such decisions should have substantial evidence to support them, and that such a board exceeds its power in purporting to enforce a decision without such a foundation. See Tamez v. State Board of Dental Examiners, Tex.Civ.App., 154 S.W.2d 976; State Board of Medical Registration and Examination v. Moore, 224 Ind. 621, 70 N.E.2d 354; Board of Medical Registration and Examination v. Scherer, 221 Ind. 92, 46 N.E.2d 602, and other cases cited in 70 C.J.S. Physicians and Surgeons § 17, at Notes 41, 42 and 58. In fact such factual foundation has been regarded in some cases as essential to "due process." In cases like the present one which can be regarded as penal in their aspect of imposing a penalty far more serious than many criminal statutes, by depriving men of their right to practice their chosen profession and thereby maintain their's and their family's standard of living, we think a sound factual foundation for the imposition of such penalty is always essential. In its argument as to the sufficiency of the evidence to support its order, the Board refers to the fact that Crosby took Ford into the petitioner's office, and, according to an undisputed portion of Ford's testimony: " * * * mixed the stuff up to take the impression with * * *", as showing that "Crosby was familiar with the set-up" in petitioner's office. The fact that Crosby was familiar with the inside of petitioner's office and facilities and equipment therein is not remarkable in view of the similarity of Crosby's and the petitioner's occupations, the fact that Crosby had to give up his lease on the room before petitioner rented it, and the further fact that they were fellow tenants sharing the same reception room in a small residential building. Nor does

such familiarity, or the conceivable inference therefrom that Crosby may have used the room for the same purpose previously, establish of itself, that Crosby did what he did in that room, under petitioner's direction. Nor did Ford establish that essential element of the subject statutory ground of revocation by using the word "they" in his testimony relating the telephone conversation he claimed to have had with petitioner about receipt of the partial plate through the mail. Careful examination of Ford's testimony shows that he used the pronoun rather loosely, ambiguously and indiscriminately in several portions of it. In the absence of any evidence that the plate was ordered, or received, in petitioner's name, or in his and Crosby's name jointly, we do not think the portion of Ford's testimony the Board refers to, by itself, or when considered in connection with all of the other evidence, is of sufficient probative force to constitute substantial evidence that Crosby furnished Ford the plate —under petitioner's direction. We think the most that could reasonably be inferred from Ford's testimony—and disregarding petitioner's denials—is that Crosby did this with petitioner's knowledge, and/or acquiescence. It is elementary that "knowledge" and "acquiescence" are quite different in meaning to "direction."

As we have concluded, after careful examination of the entire record, and thorough consideration of the various arguments advanced by both parties to this proceeding, that the order of the Board on the particular ground of revocation it concerned, is without substantial evidence to support it, and that said order must therefore be vacated, it is unnecessary to rule upon petitioner's contention that the Board erred in overruling his demurrer.

Reversed.