STATE OF INDIANA *v.* BROWN ET AL.

[No. 26,871. Filed December 21, 1937.]

*John G. McNutt, H. C. Harrington, Herbert M. Spencer, Omer S. Jackson,* Attorney-General, and *Patrick J. Smith,* Deputy Attorney-General, for the State.

*Lewis Marine,* for appellee.

TREANOR, C. J.—This is an appeal from a judgment of the Marion County Superior Court, Room 5, granting a divorce to plaintiff, Ruben C. Brown. The complaint of Ruben C. Brown v. Cora M. Brown, his wife, was for absolute divorce on the ground of incurable insanity, predicated upon Clause 8 of Chapter 87 of the Acts of 1935 which declares incurable insanity to be a cause for divorce.

The prosecuting attrney of Marion County by his deputy appeared and resisted the action pursuant to Section 3-1212 Burns Indiana Statutes 1933, section 916 Baldwin's 1934, which provides that "Whenever a petition for divorce remains undefended, it shall be the duty of the prosecuting attorney to appear and resist such petition."

The prosecuting attorney filed a demurrer to the complaint which was overruled. After the overruling of the demurrer a Guardian Ad Litem was appointed and upon the issues joined by the general denial filed by the Guardian Ad Litem the finding and judgment of the court were for the plaintiff "that he is entitled to a decree of divorce from said defendant on the grounds and cause of incurable insanity as alleged in plaintiff's complaint . . ."

The prosecuting attorney filed a motion for a new trial on the ground that the decision of the court was not sustained by sufficient evidence and was contrary to law.

The errors relied upon for reversal are:

1. The court erred in overruling the demurrer filed by the prosecuting attorney to the complaint of Ruben C. Brown.

2. The court erred in overruling the motion for a new trial filed by the prosecuting attorney on behalf of and in the name of the State of Indiana.

The complaint alleged and the evidence shows that Cora M. Brown was suffering from the disease of incurable insanity, and that she was admitted to the Central State Hospital for the Insane on the 17th day of November, 1926, and has been confined there as a patient for more than five years.

The pertinent provision of the statute regulating the granting of divorce is as follows:

"Divorces may be decreed upon the application of the injured party for the following causes, and no other:

\* \* \*

"Eighth. Incurable insanity. No divorce shall be granted because of incurable insanity unless such insane person shall have been duly and regularly committed to and confined in a hospital or asylum for the insane, either in this state or in some other state or territory, for a period of at

least five years next preceding the commencement of the action for divorce, nor unless it shall be made to appear to the court that such insanity is incurable. No action shall be maintained on the grounds of insanity unless the person applying for the divorce shall have been a resident of this state for a period of at least five years prior to the commencement of the action, nor shall a decree granted on the grounds of insanity relieve the successful party from contributing to the support and maintenance of the defendant."

The complaint alleges, in the very words of the statute, the facts which the statute purports to make a legal cause for divorce. Consequently if the General Assembly has the constitutional power to make incurable insanity a cause of divorce, the complaint states a cause of action, unless the attempted expression of this power is rendered ineffectual by defects in the manner and form of its expression. And appellant relies upon the latter since he makes no contention that the General Assembly does not have the power to make insanity a ground for divorce, but merely contends that the pertinent clause of the statute is "unconstitutional and void as it now stands."

Appellant urges that Clause 8 is invalid for the reason that it is "vague and indefinite"; and insists that the words "incurable insanity" have no definite and established meaning in law, and points out that there is no definition of the words in clause 8. It is true that there is no rule of law which purports to define "incurable insanity." The law, however, does recognize the reality of insanity as a mental state or condition, the existence of which is capable of being established by evidence, and attaches many legal consequences to the existence of this mental state. The existence of incurable insanity is a fact to be proved by whatever evidence the law recognizes as competent. It is essentially a matter of expert opinion, and since even

expert opinion is not infallible, it may often turn out that the lawful trier of facts has erroneously determined the existence of incurable insanity. But a trier of facts might erroneously determine the existence of permanent disability or any other fact. The law accepts as realities those physical and mental conditions which authoritative medical science has determined to exist. When those who were conceded to know most about the subject believed that witchcraft was a reality, the law accepted witchcraft as a fact. Since medical science recognizes the existence of the mental condition of incurable insanity, and purports to determine its existence in particular cases, the law assumes that it is possible to establish the existence of "incurable insanity" as a fact. Consequently the words "incurable insanity" have a factual meaning which is definite and tangible enough for legislative or judicial cognizance. The law dreams of the absolute but must be content with the approximate and relative.

Appellant urges that one's becoming insane after marriage is not an injury to the other party to the marriage, but that at most results only in injury to the marital relation. And assuming the foregoing to be true, appellant contends that no one is entitled under the Act to assert the cause of action for divorce on the ground of insanity of the other party since by the terms of the Act the right of action is given to an "injured party." It is true that as respects the other causes for divorce "the injured party" is presumed to suffer actual injury by the conduct which constitutes the cause for divorce. But the term "injured party" must be construed in such a way as to give effect to the obvious intent of the Act as a whole. Assuming that "incurable insanity" can be made a cause of divorce by legislative action, it follows that "injured party" must be construed to include a husband or wife

who, by the plain terms of the act, is intended to have a right of action for divorce on the ground of incurable insanity.

We see no lack of definiteness in the phrase "duly and regularly committed to and confined in a hospital or asylum for the insane." "Duly and regularly committed" reasonably can mean only that the afflicted spouse must have been *committed* under legally recognized procedure; and we assume that the "hospital or asylum" must be an institution which under the law is authorized to accept insane persons for care and treatment.

Clause 8 contains the provision that a decree of divorce granted on the ground of insanity shall not "relieve the successful party from contributing to the support and maintenance of the defendant."

And appellant contends that the foregoing is incomplete and unenforceable since there is no method provided to carry into effect the provision for support and maintenance. But there is no apparent need for an enforcing provision. The effect of the "support and maintenance" provision is to leave unimpaired the legal duty of the one securing a divorce under Clause 8 to support and maintain the divorced spouse; and such duty can be enforced on behalf of the insane person by whatever procedure would be available prior to the granting of the divorce.

We find no valid objection to Clause 8 on the ground of unreasonable and arbitrary classification. The basic fact of distinction is incurable insanity; and the requirements of committal to and confinement in a hospital or asylum for five years, as well as the five years' residence requirement of the plaintiff are merely restrictions on the right of the plaintiff.

Prior to the adoption of our present Constitution the General Assembly possessed and exercised the power to

grant divorces by special legislative enactments. ■ The present Constitution forbids the General Assembly's granting a divorce by a special law, but places no specific limitation upon its power to declare the legal causes for divorce; and whatever limitation exists must be found in the general limitations on the power of the General Assembly. Since the General Assembly has specifically enumerated the legal causes for divorce, the courts are bound by such legislative expression and cannot increase or diminish the causes.

Prior to the General Assembly's inclusion of "incurable insanity" among the causes for divorce this court held that insanity was not a legal ground for divorce. The following is from the opinion in *Baker* v. *Baker*[1]:

> "Insanity is no reason for dissolving the marriage. The statute does not make it one of the grounds for divorce, and surely no principle of justice or morality will justify the severance of the marital ties for any such cause. The judgment and conscience revolt at the thought that such a terrible affliction should be deemed cause for separating the wife from the husband. Divorces are granted not because of misfortune, but because of fault. It would be a barbarous code that would allow the wife to put aside the husband because stricken by such an awful calamity as the loss of reason."

We heartily concur with the sentiment of the foregoing and have no doubt that the law was correctly announced, since at that time there was no legislative sanction of insanity as a ground of divorce. ■ But since the statute now expressly declares that incurable insanity is a cause for divorce, the holding and reasoning of the foregoing decision is no longer controlling. Courts are bound to declare the law to be that which the General Assembly, acting within its constitutional power, enacts, be it wise or foolish

---

1.  (1882), 82 Ind. 146.

as measure'd by our personal views, and even though it shocks our sense of justice and fairness.

We conclude that the trial court did not err in overruling the demurrer to the plaintiff's complaint, and in overruling the motion for a new trial.

The judgment of the Marion County Superior Court, Room 5, is affirmed.