[Civ. No. 13329. First Dist., Div. One. July 22, 1947.]

JANET CROSS BERNSTEIN, Appellant, v. SAMUEL
LEONARD BERNSTEIN, Respondent.

Goldstein, Barceloux & Goldstein, J. Oscar Goldstein and P. M. Barceloux for Appellant.

Leland J. Lazarus and Henry Gross for Respondent.

BRAY, J.—The trial court, upon application of defendant, modified the interlocutory and final decrees of divorce with respect to partial custody of the minor.

On June 4, 1944, the child was born to the parties, who were then husband and wife. On October 10, 1944, an interlocutory decree of divorce was granted plaintiff upon the ground of extreme cruelty. The final decree was entered October 11, 1945. Both decrees followed the property settlement agreement executed by the parties in awarding the care, custody and control of the child to the plaintiff—"provided, however, that defendant shall have the right to visit said minor child at any and all reasonable times" (interlocutory decree); and "with the privilege granted to defendant to visit said minor child at all reasonable times and places" (final decree).

The agreement and both decrees provided that defendant should pay plaintiff for the support and maintenance of the child the sum of $50 per month. On November 23, 1945, plaintiff filed a petition asking that the decrees be modified to increase the support and maintenance to $200 per month. On December 10, 1945, in open court, the parties stipulated that the allowance be increased to $137.50 per month, and that plaintiff be allowed the sum of $200 for attorney's fees on the prosecution of the motion. The minute order made at that time provides further: "With consent of plaintiff the defendant at this time makes oral motion to modify said decrees as follows: That defendant be permitted to have the care, custody and control, of said minor child one day per week; and said oral motion is argued to the Court and submitted to the Court for consideration and decision, and the Court having fully considered the same and being duly advised in the premises orders that said decrees be modified as follows; that defendant have the care, custody and control of said minor child two Sundays in each month, and shall return said

minor child to the plaintiff at a reasonable time on said Sundays; that defendant have the right to visit said minor child at all reasonable times."

On January 11, 1946, a stipulation of the parties was filed by which it was agreed that the court should vacate that portion of the above minute order which dealt with the custody of the child and that a further hearing should be held on that subject.

At this hearing, May 20, 1946, evidence was offered by both parties, and the court modified the decrees by providing "That commencing forthwith, the defendant, Samuel Leonard Bernstein be, and he is hereby permitted to take custody of said minor child, Barrie Jae Berstein, and remove her from the home of plaintiff on the first and third Sundays of each month from the hours of 9:00 A. M. to 5:00 P. M." Plaintiff's appeal is from this portion of the order.

Plaintiff concedes that as the trial court has a broad discretion in determining the custody and control of minors in a divorce action, and to modify such order upon a proper showing, a clear abuse of discretion must appear before this court can interfere with the determination of that court. (*Simmons* v. *Simmons*, 22 Cal.App. 448 [134 P. 791]; *Taber* v. *Taber*, 209 Cal. 755 [290 P. 36]; *Gavel* v. *Gavel*, 123 Cal.App. 589 [11 P.2d 654].) Plaintiff contends there was that clear abuse of discretion in that the evidence "overwhelmingly" shows that the order made was against the best interests of the child.

In her opening brief plaintiff contended that there was no evidence of any change of circumstances between the entry of the decrees and the time of application for modification. However, on the argument, plaintiff abandoned this point, as well she might, because the evidence showed that there was a decided change of circumstances. First, the child had grown older. At the time of the interlocutory decree the child was four months old; at the time of the final decree sixteen months old; at the time of the hearing it was practically two years old. It is now three years old. The child had changed from an infant requiring close attention and constant care to a youngster requiring less immediate attention and entitled to start getting acquainted with its father. Secondly, both parties had remarried. Defendant is now in a position to give the child, while it is with him, in addition to his own care, that of his present wife. Moreover, there being a stepfather in the picture now, it becomes more

necessary for the child to become better acquainted with her natural father. Thirdly, the evidence shows that the mother made it difficult for the father to see the child, would not permit him to see the child in the absence of herself or relatives, particularly the mother's parents, between whom and defendant a bitter feeling exists; and on occasions would not let him take the child out of her house.

In her brief appellant contended that cases such as *Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719], and *Moon* v. *Moon*, 62 Cal.App.2d 185 [144 P.2d 596], holding that to justify a modification there must be a change of circumstances arising after the original decree was entered, controlled here. This contention overlooked the evidence in the case, and the fact that, even though there were no such evidence, the rule in question is not a hard and fast one without any exception. The rule is best stated in a case arising as here, where originally the court held no hearing to determine the best interests of the child in the matter of custody, but followed the agreement as to custody made by the parties and in which case the court refers to the Foster case above mentioned. In *Peterson* v. *Peterson*, 64 Cal.App.2d 631, 633 [149 P.2d 206] the court said: "The rule of 'changed circumstances' might well be termed a creature of judicial expediency. It is not statutory. It is a means to end the turmoil of litigation so often attendant with matters involving questions of custody and to make it impossible for a dissatisfied party to keep the courts continually occupied with his or her grievances concerning former orders. Accordingly, the courts have generally held that in absence of a showing of some change in circumstances making it advisable from the standpoint of the welfare of a child that the former order be modified, a request for a modification will be refused.

"However, that is not to say that the courts have no jurisdiction to modify previous orders in the absence of such a showing nor do the decisions wherein the rule is enunciated 'deny the power of the court to make such modification of its orders relative to the custody of children.' (*Bogardus* v. *Bogardus*, 102 Cal.App. 503, 506 [283 P. 127].) It is not an iron-clad rule to which there can be 'no possible exception.' (*Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719].)"

It is not necessary to detail here the evidence adduced at the hearing. Suffice it to say, there was ample evidence to support the action of the trial court. It is true that in most respects, the evidence was conflicting. The plaintiff and her

mother and father endeavored to picture the defendant as a person of "vile nature and contemptible disposition," using "obscene language even in the child's presence" and showing a "manifest lack of interest in the child and her welfare over the entire period of time from her birth to the date of the last hearing herein." The defendant denied these charges. The court had the witnesses before it and obviously believed the defendant against the plaintiff and her parents, who cannot be characterized as wholly unbiased. An examination of the evidence justifies the conclusion that the opposition of the mother to the father having the child a portion of two Sundays a month is based more upon a desire to harass the father than on any probability of injury to the child. That, contrary to the claims of the mother, the father has a real affection for his child, is shown, among other things, by the fact that he stipulated that the amount for her support might be increased from $50 to $137.50 per month.

Plaintiff lays great stress upon the testimony of a competent pediatrician who stated that in his opinion, allowing the father to have the child from 9 a. m. to 5 p. m. two Sundays a month would not be advisable as it would interfere with the child's routine. The father indicated that on these Sundays he intends to take the child to his home in Pittsburg, a round trip from San Francisco of about 90 miles. The pediatrician testified that this would be against the child's welfare. His testimony was weakened somewhat by his assumption that the child while with her father would be with a "stranger," and his statement that "it would be better if it [the child] didn't get to know its father until later." However, the testimony showed that the defendant is a practicing physician with some experience and practice in pediatrics, and that in his opinion his plans with reference to the youngster would cause it no harm. Here again the trial court had the right to determine the credibility of the witnesses and also what weight should be given the expert testimony. The court was not concluded by the testimony of the expert pediatrician, and could give it such weight as the court deemed it was entitled to be given. (10 Cal.Jur. 971.) It was stretching the credulity of the court considerably to expect it to believe that placing a two-year-old child for 8 hours twice a month in the custody of its father, a successful practicing physician, would cause the child any great harm even though on those occasions the father might take it for a 90-mile automobile trip.

Plaintiff in her brief states, in effect, that this court, as a matter of law, should hold that the trial court abused its discretion because of the situation with reference to the child's name. Upon her birth, without the consent and over the objection of the defendant, the plaintiff named the child "Barrie Jae," and had her name so entered upon her birth certificate. The father has consistently refused to call her by that name. He has named her "Barbara Leora" and calls her by that name on all occasions. He testified that he intends to continue to call her by that name, and will not call her by the name given her by her mother. While it would seem that reasonable people should be able to find a name for their child which would be mutually acceptable, and that in this case both parents are unnecessarily stubborn on this subject, no court can say that the failure of a father to accept the name given to the child by the mother over his objection is grounds for depriving the father of the right to see, visit, or have the child with him. Both parents here are somewhat inclined to use the child as a means of getting even with the other parent for the failure of their marriage. They should remember that "A custody proceeding is not one to discipline one parent for such parent's shortcomings as an *individual*, nor to reward the other for any wrong suffered therefrom." (*Washburn* v. *Washburn*, 49 Cal.App.2d 581, 588 [122 P.2d 96].)

The paramount question in cases of this kind is the welfare and best interests of the child. (*Washburn* v. *Washburn*, *supra*.) A study of the evidence in this case impels the conclusion, that far from abusing its discretion, the trial court exercised a wise discretion in finding, as it did, that the welfare and best interests of the child require that it be given a better chance to get acquainted with its father than it has had, and that the modification made by the court in the decrees was reasonable and proper.

The order appealed from is hereby affirmed.

Peters, P. J., and Ogden, J. pro tem., concurred.