[Civ. No. 13881. First Dist., Div. One. Nov. 23, 1948.]

LENA TRIPOLI, as Administratrix, etc., Appellant, v. SAL-
VATORE CRIVELLO, Respondent.

Walter H. Duane for Appellant.

Otto A. Hoecker for Respondent.

BRAY, J.—Appeal from a judgment decreeing that re-
spondent is the owner of a bank account in the sum of
$3,432.77 standing in his name as trustee.

The sole question involved is whether certain decrees and
orders in a divorce proceeding between respondent and his

then insane wife awarded any moneys to said wife as her separate property.

Appellant is the administratrix of the estate of Marie Crivello, deceased (the wife above mentioned). The trial court found that the moneys were separate property of the husband. As will be pointed out later, it is immaterial whether they are community property or his separate property. In either such event, appellant can have no claim on them. Her right to prevail depends upon their being separate property of the wife.

There is no conflict in the evidence. Respondent and Marie married in 1915. Appellant is the sole child of the marriage. The husband and wife acquired as community property a home on Lombard Street in San Francisco. Marie became insane and was committed to Agnew State Hospital. In May, 1942, respondent filed suit for divorce against Marie on the ground of her incurable insanity. (Civ. Code, § 108.) The daughter (appellant herein) was appointed guardian *ad litem* of her mother in that action. She was not represented by an attorney. She stipulated to the time of trial and waived findings. On June 12, 1942, an interlocutory decree of divorce was granted the husband on the ground of the wife's incurable insanity. The complaint alleged that there was community property, without describing it.

The portions of the decree important here read: "It Is Further Ordered, Adjudged, and Decreed that plaintiff pay to Agnew State Hospital, or such other institution as defendant may be confined in, such sums as shall be necessary and reasonable to pay for her care in said institution.

"And It Is Further Ordered that the real property of the parties hereto, located at 867 Lombard in the City and County of San Francisco, State of California, *be held by plaintiff for the benefit of the community*, and that said real property be not sold without the consent of this Court first had and obtained." (Emphasis added.)

Appellant contends that the provision that the property be held by the husband "for the benefit of the community," not to be sold without court order, constituted a setting aside of the property in separate undivided half interests to each spouse. Obviously, there is nothing in the language of the decree to support such an interpretation. "[F]or the benefit of the community" means what it says, and cannot mean any separation of the community interest. That the divorce

court so considered it is shown by the subsequent proceedings in the case.

On November 24, 1942, there was filed a "Notice of motion for permission to sell *community property* now held by plaintiff for the benefit of the community." (Emphasis added.) It gave notice that on a certain date the plaintiff therein would move for an order permitting him to sell the "community property" at 867 Lombard Street.

December 1, 1942, pursuant to this motion, the court made its "Order permitting sale of property." After referring to the motion of respondent to sell the "community property" held by him for the benefit of the community, stating that the defendant therein appeared through her guardian *ad litem* Lena Tripoli, and finding that a sale would be for the best interests of the parties, the court "ORDERED that the title to the . . . [Lombard Street] property be and the same is hereby awarded to plaintiff free and clear of any claim of said defendant, except as herein provided . . ." The order further provided that the sale price should be $10,000 on certain terms therein set forth. Then follows this provision: "That all moneys received by plaintiff from said sale be deposited with the Bank of America National Trust & Savings Association in the name of *plaintiff as trustee,* and that no funds be withdrawn from said account without the consent of this Court first had and obtained." (Emphasis added.)

May 4, 1943, respondent filed a "Notice of motion for order amending order permitting sale of *community property* now held by plaintiff for the benefit of the community." (Emphasis added.) The notice was accompanied by an "Affidavit on motion for amendment of order permitting sale of *community* real property" (emphasis added) wherein respondent set forth that he was unable to obtain $10,000 for the property, but could get $8,500 on certain terms, and asked the court to permit a sale on that basis.

May 5, 1943, the court made an "Order amending order permitting sale of real property" which is practically a duplicate of its previous "Order permitting sale of property" except that the sale price is $8,500 and there are certain differences in the terms. However, the paragraph awarding the title to respondent and the provision for the holding of the moneys received from the sale are identical with those in the prior order.

May 6, 1943, a "Return of sale of *community* real property" was filed. (Emphasis added.) This stated that respondent

made his return and account of sale of "community" real property, and that he sold the property for $8,500, less commission, taxes, etc.

May 6, 1943, the court made its "Order confirming sale of *community* property." (Emphasis added.) After stating that respondent had filed his return of sale of "community" real property and other matters, the court decreed that the sale of the "community" real property thereafter described (the Lombard Street home) was confirmed. The paragraph pertinent here, reads: "It Is FURTHER ORDERED, ADJUDGED, and DECREED that plaintiff shall deposit the net proceeds of said sale with the Bank of America, National Trust and Savings Association, in the name of plaintiff as trustee, and that no funds be withdrawn from said account without the consent of this Court first had and obtained."

June 15, 1943, a final judgment of divorce was entered in the usual form, except the following paragraphs: "It Is FURTHER ORDERED, ADJUDGED, and DECREED that the proceeds of the real property now impounded at Bank of America, National Trust and Savings Association, subject to order of this Court, shall remain so impounded until such further order of this Court.

"Nothing in this decree contained shall relieve plaintiff of any obligation imposed by law for the support of the defendant."

September 10, 1943, the court made, and on September 13 filed, an "Order permitting withdrawal of proceeds of *community* real property now on deposit with Bank of America." (Emphasis added.) This stated that there was on deposit in a certain branch of the Bank of America the sum of $8,237.85 in the name of plaintiff as trustee, and "good cause therefor appearing,

"It Is HEREBY ORDERED that said Salvatore Crivello be and he is hereby authorized to withdraw the sum of $4,137.85 from said account and to retain the same without the necessity of further accounting to this Court therefor.

"It Is FURTHER ORDERED that said Salvatore Crivello shall retain the balance of $4,100.00 in said savings account at Bank of America, National Trust and Savings Association, in the name of Salvatore Crivello as trustee, and that said account shall be subject to withdrawal only upon order of this Court."

It then went on to provide that respondent is authorized to withdraw from the balance in the account whatever sums

may be required by him for the support and maintenance of the defendant therein at Agnew. It then provided: "It Is Further Ordered that the Court does hereby reserve jurisdiction to make any further order relative to the balance which may be on hand in said trust account from time to time."

The same day this order was filed there was also filed in the divorce action and marked "filed as directed by Judge of the Superior Court" a letter from the Department of Institutions of the State of California to the husband's attorney stating: "We have for reply your letter of August 6 relative to a property settlement in a divorce action in which [Mary Crivello] is the defendant." After discussing the cost of a person's care at the state hospital, the letter stated: "We believe that a figure approximating $4,100 would be more nearly equitable in this matter." It is apparent that the court had this letter in mind in requiring respondent to retain in the trustee bank account the sum of $4,100, and awarding to him the balance above that sum then in the account.

Thereafter, three orders were made by the court authorizing respondent to withdraw certain sums for reimbursement to him of moneys expended by him for clothing for the wife.

On July 4, 1946, Marie died. Thereupon, appellant as administratrix filed a notice of motion, accompanied by an affidavit, asking the court to pay the balance in the Bank of America account in the name of respondent as trustee, to her, claiming it to be the property of the wife's estate. Respondent also filed a notice of motion and affidavit asking the court to order it paid to him. The balance amounts to $3,432.77. No further order of the divorce court has been made. Appellant brought this action to recover this sum from respondent. Respondent cross-complained asking that his title to the money be quieted.

The trial court found that the real property was awarded in the divorce action to the husband; also that the divorce court, in the order of September 10, 1943, had required the husband to deposit $4,100 in the bank in his own name as trustee, in lieu of the requirement of a bond for the payment and support of the wife at Agnew. Appellant attacks both of these findings. However, it is not necessary to consider whether these findings are correct in themselves. Unless at some time in the divorce proceeding the court awarded the money to the wife as her separate property, appellant cannot prevail, whether the money was awarded to the husband or not. If not awarded to him, it would still retain its

community property aspect and hence belong to the husband on the wife's death.

Moreover, under the ruling in *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825], as the question here is to be determined solely upon a construction of the terms of the decrees and orders in the divorce action (there was no evidence upon the subject in the court below) it is the duty of this court to make the final determination in accordance with the applicable principles of law.

As pointed out before, the interlocutory decree upon which appellant principally relies does not bear the construction she puts upon it. Hence, the cases cited by her like *Leupe* v. *Leupe*, 21 Cal.2d 145 [130 P.2d 697], and *De Haven* v. *Superior Court*, 114 Cal.App. 253 [300 P. 95], holding that when an interlocutory decree of divorce becomes final the court cannot thereafter change the disposition made of the property rights of the parties, are not in point. Here, the court expressly held in abeyance any final disposition of the community property. This the court had the right to do. (*Hogarty* v. *Hogarty*, 188 Cal. 625 [206 P. 79]; *Ex parte Ambrose*, 72 Cal. 398 [14 P. 33].) It was to be held by the husband "for the benefit of the community" and subject to the further orders of the court. There is no validity to appellant's contention that the further orders were invalid. The money was treated as community property in the subsequent orders of the court, at least until the "Order permitting withdrawal of proceeds of community real property," when the court definitely awarded all but $4,100 to the husband. It did not set aside to the wife the latter sum, but ordered it held by the husband as trustee for the support and maintenance of the wife at the state hospital, reserving the right to make further order relative to it. It is obvious that the court was not setting this sum aside to a wife who it found was incurably insane, and hence would never leave the hospital. The court apparently found the $4,100 suggested by the Department of Institutions to be a reasonable amount to provide for the support of the wife for "the remainder of the life expectancy" mentioned in section 108 of the Civil Code. This section provides in the event of a divorce on the grounds of incurable insanity "No decree granted on this ground shall relieve the spouse granted the divorce of any obligation imposed by law as a result of the marriage for the support of the spouse against whom the divorce is granted. It shall be alleged in the complaint and proved at the trial of the cause

either that there is reasonable ability to support the insane spouse for the remainder of the life expectancy or that such insane spouse has property sufficient to provide support for the remainder of the life expectancy, and the court shall make such order for support, or require a bond therefor, as the circumstances require.'' Whether, as claimed by respondent, the court, by this order, was awarding the $4,100 to the husband and then holding it as the bond mentioned in the section, or was continuing to maintain its community aspect, is not important. The court was not awarding it to the wife as her separate property. Had the court intended to do so, it would have said so and would have given the guardian *ad litem* (appellant here) the control of it, rather than the husband, or ordered a general guardian to be appointed.

For the same reason, it is not necessary to determine respondent's contention that the award of title to the husband in the two orders authorizing sale of the property constituted a setting aside to him of the entire property as his separate property.

Appellant contends that respondent failed to comply with the court's orders in that at no time did he deposit in his name as trustee the whole amount received from the sale of the property. Four thousand, ten dollars was the only sum so deposited. How this affects the question here does not appear. The matter was fully known to the judge below.

Appellant for the first time attempts to raise on this appeal the contention that the guardian *ad litem* had no legal power to represent the wife in the divorce action, citing *Cohen* v. *Cohen,* 73 Cal.App.2d 330 [166 P.2d 622]. While we are not passing on this question because it was not raised in the court below (*Morgan* v. *Clapp,* 207 Cal. 221 [277 P. 490]), we deem it advisable to point out that the Cohen case was not one brought pursuant to the provisions of section 108 of the Civil Code, which section expressly provides that a guardian *ad litem* may be appointed in such a proceeding to represent the insane spouse.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.