## Tipton v. Tipton.

February 8, 1949

George C. Robbins and Shumate & Shumate for appellant.

Coleman Covington for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

The 1946 session of the Kentucky General Assembly added another ground for divorce to those previously existing by amending KRS 403.020 and adding thereto subsection (5), the material part of which provides in substance that a divorce may be granted to the sane

spouse when either the husband or wife has become permanently and incurably insane and has been confined in an insane asylum or hospital for not less than five years prior to the filing of the petition for divorce and further provides that no divorce shall be granted unless the court shall find from the testimony of two or more physicians competent in psychiatry that such insanity, in their opinion, is permanently incurable. Other provisions in the act provide for the support and maintenance of a defendant wife when necessary and circumstances warrant.

While there have no doubt been some divorces granted under this subsection since its enactment, the question involved has not heretofore reached this Court, since it has no jurisdiction to review a judgment of a lower court granting a divorce. This appeal is prosecuted from a judgment of the lower court denying a divorce on the ground above set out.

### Statement of Facts.

Appellant and appellee were married in the year 1921, and lived together on a farm in Madison County until December 3, 1941, when appellee was adjudged insane by proper proceedings in the Madison Circuit Court and committed to the Eastern State Hospital at Lexington where she has since been continuously confined. They have two grown children who are self support'ng. On December 14, 1946, and more than five years after adjudication and commitment, appellant brought this suit for absolute divorce against appellee alleging that she is now permanently and incurably insane. Appellee's committee was made a defendant and subsequently a guardian ad litem was appointed for her and he made a vigorous defense in her behalf. After proof was taken on depositions, the case was submitted and the lower court entered a judgment dismissing appellant's petition. The court rendered no written opinion and gave no reason for its decision. However, it is stated in appellant's br'ef, and not denied in that of appellee, that in oral remarks made at the time of entry of judgment, the judge of the lower court indicated that he had a "settled aversion" to this subsection of the statute and stated that in his opinion it was a "horrible thing" for one spouse to seek a divorce from an insane spouse regardless of

the facts and circumstances of the case. If the ground for divorce was otherwise proven and the divorce was denied because of the predilections of the court as to the wisdom of the law, it would be our duty to reverse the case since it is our view that it is not for the courts to determine the wisdom and policy of a legislative enactment, that being the exclusive function of the legislative body. It is for the courts to determine whether the proof produced brings the particular case within the terms of the act. That brings us to the real question on this appeal which is:

## Did Appellant Prove His Case?

As required by the statute, appellant produced as evidence in his behalf the testimony of two physicians competent in psychiatry. One of these was Dr. O. F. Knepper who has had over seven years' experience and practice in psychiatry and has been engaged in that capacity in the Eastern State Hospital at Lexington since 1941, during all of which time appellee has been in that hospital and under his charge. He testified that appellee is insane; that she has shown no improvement but, on the contrary, gradual deterioration and has been suicidal at times; that he did not feel that she would ever return to normal life and adjust herself to normal living conditions because she requires close supervision; that there is no other treatment than hospitalization and that her mental illness is chronic. He diagnosed her insanity as Dementia Praecox, hebephrenic type, which he says is a type of mental illness in which a person gradually deteriorates intellectually; characterized by rather silly behavior, exclusiveness and unwillingness to mix with other people. On cross examination he was asked these questions and gave these answers:

"Q. Do you consider the patient incurable at the present time? A. Her present condition indicates that she could probably not make an adjustment outside an institution.

"Q. Do you think that she will spend the remaining days of her life in this institution? A. The present indications are that she will."

Dr. Knepper would not make the flat statement that appellee is permanently and incurably insane any

more than he would testify that any of the 1,700 inmates of the mental hospital at Lexington are permanently or incurably insane but that she is as bad off mentally and as incurably insane as the majority of the inmates; that if she recovers her senses and mental poise and adjustment to society, it would be a miracle.

Dr. Lipscomb, also a psychiatrist of experience and now engaged in that capacity at the hospital where appellee is now confined and also has had the opportunity to examine and observe her, testified as follows concerning her:

"Q. What is her mental condition in regard to being a person of sound or unsound mind at the present time? A. I regard her a person of unsound mind, in a badly deteriorated state.

"Q. What do you designate her as being? A. Dementia praecox, hebephrenia type.

"Q. From your present knowledge of her mental illness, do you think she will get better or worse as time goes along? A. My prediction is that this deterioration will continue and that she will remain a patient in this institution.

"Q. Is it your opinion that she will ever be able to recover to the extent that she could return to society and adjust her ways to normal living again? A. I do not think so. In fact,—if you want this—, in fact, I think she will be a patient in this institution until she dies.

"Q. You think her mental condition will be a permanent proposition? A. Yes, sir, I do.

"Q. Dr. Lipscomb, state whether or not you regard Mrs. Tipton's mental condition as permanent and incurable. A. Well, I have already stated that I regarded it as permanent; and, in my opinion, it is incurable. I think the facts,—that she shows marked deterioration and rarely ever speaks in a coherent manner,—in fact, rarely ever speaks at all—, and that she prefers to be secluded in a back room of the ward, that it is devoted to the more severe type of cases—are all evidence to support my opinion that the case is incurable."

It is insisted by appellee's attorney that this testimony is not sufficient to prove that appellee is permanently and incurably insane within the meaning of the statute since neither of these witnesses would testify positively and with finality that she is. We do not construe the statute as requiring such absolute testimony. What the statute says is "nor unless the court shall find from the testimony of two or more physicians competent in psychiatry that such insanity, *in their opinion*, is permanently incurable." (Our emphasis). We think the testimony of the two physicians in this case, who are in position to observe appellee, meets the requirements of the statute. Few physicians would testify positively under oath that any mental condit on, or any disease for that matter, is incurable. All they can say is that from their experience and in the light of present day medical knowledge, it is their *opinion* that a certain disease is incurable or mental condition is permanent. Many diseases once thought incurable are now curable as medical science advances. If the statute being construed is to have any practical value and accomplish the evident intention of the legislative body, it must be reasonably construed and not given a strained and unnatural construction. We think the expert test mony in this case justifies the court in finding that appellee's condition is permanent and that she will never be able to resume her status as a wife to appellant and that the lower court erred in dismissing appellant's petition. The judgment is therefore reversed with direct ons to enter another granting appellant the relief prayed for in his petition. In such judgment the court may make such requirements as to appellee's future care and support as the circumstances warrant and may require as a condition of the judgment that appellant execute a bond to the State of Kentucky for the purpose and as provided in KRS 403.020(5) (d).

Judgment reversed.