[Civ. No. 14196. First Dist., Div. Two. Feb. 21, 1950.]

WALTER WIRZ, SR., Appellant, v. BERTHA WIRZ, Respondent.

Millington, Dell'Ergo, Weeks & Morrissey for Appellant.

Louis B. Dematteis, District Attorney, and Elinor Louise Falvey, Deputy District Attorney, for Respondent.

NOURSE, P. J.—Plaintiff sued for divorce charging his wife with "incurable insanity" under the provisions of section 108 of the Civil Code. The trial court denied the decree. The principal question involved on the appeal is the quantum of proof required to establish "incurable insanity."

The code section reads in part: "A divorce may be granted on the grounds of incurable insanity only upon proof that the insane spouse has been confined to an institution . . . for a period of at least three continuous years immediately preceding the filing of the action and upon the testimony of a member of the medical staff of said institution that such spouse is incurably insane." The section requires the court in grant-

ing the decree of divorce to make an appropriate order for the support of the spouse, or require a bond therefor.

To prove the issue of "incurable insanity" the plaintiff offered the evidence of Dr. Walter Rapaport, Superintendent and Medical Director of Agnew State Hospital where defendant had been confined since December 15, 1938, under commitment by the superior court. The doctor testified that, in his opinion, the patient would continue to get progressively worse, that "in the realm of reasonable probability, that will be the course." Question: "[I]t is your opinion, is it not, that she is incurably insane and will never be released?" Answer: "That is my opinion." On cross-examination Dr. Rapaport testified in answer to a question by the court: "What is your diagnosis, Doctor?" Answer: "The diagnosis is manic depressive; and then they have recurrences. It used to be called circular insanity in the old days, but the condition, if it progresses and remains without improvement over a period of years, indicates a chronic form of manic depressive, from which they do not get well." The trial court did not find that any of this testimony was untrue. Its decision was based upon the ruling that it was necessary for plaintiff to prove that defendant was "absolutely, incurably insane; and I don't think any human being can say that about anybody."

The finding of fact on this issue is "That it is not true and that it is not sustained by the evidence submitted that the said defendant BERTHA WIRZ is incurably insane."

The question presented here is whether the finding that defendant was not incurably insane is contrary to the evidence where the member of the medical staff testified that according to his best opinion defendant was incurably insane, but that he could not go beyond the realm of reasonable probability.

There are no California cases with respect to the proof of incurable insanity and very few outside this state. The authority nearest in point, although there still is a minor distinction, is *Tipton* v. *Tipton* (1949), 309 Ky. 338 [217 S.W. 2d 799]. As in our case, the trial judge, who disagreed with the statute permitting divorce on the ground of incurable insanity, denied a divorce where the experts testified that according to their opinion defendant would probably not recover and would have to stay permanently in an institution, but refused to say with respect to any patient that he or she was absolutely incurably insane. The Court of Appeals re-

versed with directions to grant the divorce stating (p. 801 [217 S.W.2d]): "Few physicians would testify positively under oath that any mental condition, or any disease for that matter, is incurable. All they can say is that from their experience and in the light of present day medical knowledge, it is their *opinion* that a certain disease is incurable or mental condition is permanent. Many diseases once thought incurable are now curable as medical science advances. If the statute being construed is to have any practical value and accomplish the evident intention of the legislative body, it must be reasonably construed and not given a strained and unnatural construction. We think the expert testimony in this case justifies the court in finding that appellee's condition is permanent and that she will never be able to resume her status as a wife to appellant and that the lower court erred in dismissing appellant's petition." See also statements to the same effect with respect to propriety of divorce on the ground of incurable insanity. (*Dodrer* v. *Dodrer* (1944), 183 Md. 413 [37 A.2d 919] and *State* v. *Brown* (1937), 213 Ind. 118 [11 N.E.2d 679, 682, 113 A.L.R. 1243].) The latter case also held that incurable insanity is a recognized mental state which may be established by evidence.

There is another line of cases which has led to judicial discussion of "incurability." A Colorado statute makes "obtaining a fee on the representation that a manifestly incurable disease can be permanently cured" a ground for revocation of a medical license. In *Graeb* v. *State Board*, 55 Colo. 523 [139 P. 1099, 1101], the Supreme Court of Colorado held 4 to 3 that that provision was invalid for uncertainty because, among other grounds, incurability could be no more than a matter of well-grounded opinion and it could not be said at any point short of death that it is a "manifest" fact. The minority argued that the statute should be interpreted more widely according to its intent to protect hopeless patients from being defrauded by physicians. Both in the Graeb case and in *Freeman* v. *State Board of Medical Examiners* (1915), 54 Okla. 531 [154 P. 56], where a statute of the same tenor as the one of Colorado did not contain the word "manifest," the principal question was whether the statute applied to promising care to a patient ill in an incurable degree from an illness not necessarily incurable, like tuberculosis. The Oklahoma Court expressly followed the Colorado minority and held that an interpretation according to legislative intent and purpose required the right to revoke the license of a phy-

sician who takes a fee for the cure of a patient whose disease has reached a state incurable "according to the then general state of knowledge of the medical profession."

We are in accord with the ruling in *Tipton* v. *Tipton, supra,* although there is this small distinction that the Kentucky statute expressly states that it is sufficient that at least two psychiatrists declare that "in their opinion" the insanity is permanently incurable. Although our section 108, Civil Code does not specifically mention "opinion" it would seem that our general theory of proof leads to the same effect. Section 1826, Code of Civil Procedure, expressly states that absolute certainty is not required "because such proof is rarely possible." ▆▆ Moral certainty or proof which produces conviction in an unprejudiced mind is sufficient even in criminal cases. The moral certainty is not required in civil cases; there "reasonable probability," as testified to by Dr. Rapaport, is normally sufficient and is used as a counterpart to "preponderance of the evidence." (*Murphy* v. *Waterhouse,* 113 Cal. 467, 473 [45 P. 866, 54 Am.St.Rep. 365].) In *Liverpool etc. Ins. Co.* v. *Southern P. Co.,* 125 Cal. 434, 440, 441 [58 P. 55], it is said: "In civil cases which are decided in favor of the litigant upon a mere preponderance of evidence, the rule of decision is, after all, but a rule of probability. . . ." Compare also *Estate of Moramarco,* 86 Cal.App.2d 326, 338, 339 [194 P.2d 740]. Even where a specially strong degree of proof is required, or where a presumption to the contrary must be overcome, absolute certainty (conclusive proof) is not required. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 446 [159 P.2d 958]; *Estate of Duncan,* 9 Cal.2d 207, 217 [70 P.2d 174]; *Estate of Pepper,* 158 Cal. 619, 622 [112 P. 62, 31 L.R.A.N.S. 1092]; *Freese* v. *Hibernia Sav. etc. Soc.,* 139 Cal. 392, 395 [73 P. 172].) In *Simonton* v. *Los Angeles T. & S. Bank,* 205 Cal. 252, 258 [270 P. 672], it is pointed out that there is no hard and fast rule for the quantum of proof required under section 1826, Code of Civil Procedure, in a special case. All the law requires is proof "reasonably certain in view of all the circumstances."

▆▆ As pointed out in *Tipton* v. *Tipton* and *Graeb* v. *State Board, supra,* with respect to incurability of insanity no higher degree of proof than well grounded opinion evidence in the light of present day medical knowledge can be obtained. To require more certainty is unreasonable and would frustrate the intent of the Legislature. And it is said: "the objective sought to be achieved by a statute as well as the evil to be

prevented is of prime consideration in its interpretation." (*Rock Creek etc. Dist.* v. *County of Calaveras,* 29 Cal.2d 7, 9 [172 P.2d 863]; 23 Cal.Jur. 764.)　　The objective sought to be achieved was the widening of the possibility of divorce, and the evil to be prevented the permanent union of a sane spouse with an insane one who does not offer hope of recovery. The disapproval by the trial court of that purpose cannot permit him to thwart it nor may we defeat the purpose of the statute by an interpretation which would make it unenforceable.

The question remains whether the court was bound by the expert testimony of Dr. Rapaport. In the Dodrer case (37 A.2d at page 922) it was held that although the statute requires the affirmative opinion of certain experts, such opinion is not conclusive on the court. This is in accord with the general rule as to opinion evidence in California which is held not to be conclusive. (*Spencer* v. *Collins,* 156 Cal. 298, 307 [104 P. 320, 20 Ann.Cas. 49]; *May* v. *Farrell,* 94 Cal.App. 703, 715 [271 P. 789]; *Bernstein* v. *Bernstein,* 80 Cal.App.2d 921, 925 [183 P.2d 43]; 10 Cal.Jur. 971.) But in *Estate of McCollum,* 59 Cal.App.2d 744, 750 [140 P.2d 176], the only medical expert testified that Mrs. McCollum was incompetent to make a will. The court said: "While this opinion was entitled to be carefully weighed by the trial judge it was not conclusive on the subject, . . . and like the evidence of any other witness could be rebutted by other satisfactory evidence." But in our case there is no rebutting evidence whatever. The rule that uncontradicted testimony of a witness, in no way impeached or discredited, may not be arbitrarily disregarded (*Mantonya* v. *Bratlie,* 33 Cal.2d 120, 127 [199 P.2d 677]) applies also to medical expert opinion evidence. (32 C.J.S. 397; *Levey* v. *Minott,* 214 App.Div. 192 [211 N.Y.S. 883].) In the Mantonya case our Supreme Court said: (p. 127) "where there is any real conflict in the evidence the finding of the trier of fact is conclusive. But the trier of fact is not entitled, arbitrarily or upon mere caprice, to disregard uncontradicted, entirely probable testimony of unimpeached witnesses." The rule is pertinent here because the trial judge expressly commended the expert witness for his testimony and stated that he rejected it because he did not "like the policy of the law. I think it is the most unjust law ever enacted, and until it is proved this decree is denied."

On the second ground little need be said. If the trial court was not satisfied with the showing of plaintiff's ability

to support the defendant for the remainder of her life expectancy it was authorized by the statute to require a bond therefor ''as the circumstances require.''

The evidence of plaintiff's ability to support defendant was meager and unsatisfactory as proof. The complaint alleged that the parties owned community property consisting of the home in Redwood City and that plaintiff had the ability to and was willing to support the defendant ''for the rest of defendant's life.'' The ownership of the realty was conceded. Proof was made that plaintiff was employed at wages of $1.88 an hour with reasonable expectancy that the employment would continue. There was no proof of the value of the real property or of the liquidable value of defendant's interest therein. There was no offer to post a bond, and no suggestion of plaintiff's ability to secure payment of the costs of defendant's support. It was shown that for the past 10 years she had been under the care of the state and that nothing had been paid by plaintiff for that care. Clearly the purpose of the statute is to permit a bond when the court is not satisfied with the proof that plaintiff's ability to support is absolutely certain. The power of the court under this section is fully considered in *Tripoli* v. *Crivello,* 88 Cal.App.2d 760 [199 P.2d 726], where the community property was ordered sold and the wife's share put in trust to cover the cost of her maintenance in the state institution. This provision is designed to make the statute available to those in poor financial circumstances as well as to those who have ample funds to pay for their separation from an insane spouse.

However, since the rule of procedure is settled that a finding of the trial court may not be disturbed on appeal when supported by competent evidence, we must hold that the finding that plaintiff's ability to support the defendant was not proved is a finding on a material question of fact which is just as binding as an affirmative finding that a material issue has been proved.

Judgment affirmed.

Goodell, J., concurred.

DOOLING, J.—I concur. While I appreciate the propriety of the Legislature's making any reasonable provision for the future protection of the insane spouse and of the state where a divorce is granted on the ground of incurable insanity, I question the wisdom and justice of making that provision so

sweeping that the statute gives rights to the rich while it denies the same rights to the poor. Nevertheless the Legislature has seen fit to condition the right to divorce on the ground of incurable insanity on a showing ''that there is reasonable ability to support the insane spouse for the remainder of the life expectancy or that such insane spouse has property sufficient'' for that purpose. (Civ. Code, § 108.) The trial court found that these conditions do not exist in this case, the finding has substantial evidentiary support, and under the existing statute this justifies the judgment denying the divorce.