Roger ESSENBURG, a Minor, by D. N. Ingman, his guardian ad litem, Plaintiff,

v.

Richard CABANE, Defendant.

Civ. No. 1884.

United States District Court
D. Hawaii.

June 27, 1961.

D. N. Ingman, Honolulu, Hawaii, for plaintiff.

Albert Gould, Honolulu, Hawaii, for defendant, Levinson & Cobb, Honolulu, Hawaii, of counsel.

TAVARES, Chief Judge.

In this case the Plaintiff Essenburg sued the Defendant Cabane for damages to his motorcycle, and for personal injuries, alleged to have been caused to the Plaintiff by an accident in which an automobile driven by Defendant struck the rear end of the Plaintiff's motorcycle. The case was tried before a jury, but the Court found the evidence as to Defendant's negligence in causing the collision so clear and undisputed that the Court gave an instruction directing a verdict for the Plaintiff on that issue. leaving only the question of damages and related questions to the jury.[1] That and other instructions, however, left entirely to the jury the questions (1) as to what damages were caused to the motorcycle, (2) whether the Plaintiff was personally injured by the accident, and (3) if so, the nature and extent of such injuries and the amount of damages, if any, therefor. The jury as instructed by the Court, brought in a verdict for the Plaintiff and against the Defendant and, in the form of verdict submitted by the Court (which required them to find separately special damages and general damages, if any), assessed the special damages at $61.20 and fixed the general damages at "None". The Motion for a New Trial in its essence contends that the jury erred in finding no general damages. The grounds of the Motion are set forth in footnote No. 2.

The Court has carefully considered every ground urged by the Plaintiff

1. The Court's instruction in this regard reads as follows:

"Instruction No. 14

"The plaintiff in this case claims damages for damage to his motorcycle and for personal injuries alleged to have been suffered as a proximate result of negligence on the part of the defendant.

"The evidence in this case bearing upon the question of whether or not the defendant was guilty of negligence in causing or permitting his automobile to come in contact with the rear end of plaintiff's motorcycle, is such that I instruct you that, as a matter of law, you must bring in a verdict in favor of the plaintiff and against the defendant.

"Since, as I have instructed you, your verdict must be for the plaintiff on the issue of negligence, the only issues remaining for the jury to determine are: (1) What damages to the plaintiff's motorcycle were proximately caused by the accident, and the amount the plaintiff is entitled to recover by reason thereof; and (2) What injury, if any, to the plaintiff was proximately caused by the accident and the amount of damages, if any, the plaintiff is entitled to recover by reason thereof.

"The burden is upon the plaintiff to prove, by a preponderance of the evidence, that the defendant's negligence was a proximate cause of any such damage or injuries and consequent damages sustained by the plaintiff.

"Your verdict on each of these remaining issues must be unanimous."

2. The grounds are as follows:

"1. The verdict of the jury entered herein May 12, 1961, is contrary to law and the evidence.

"2. The verdict is obviously the result of prejudice or sympathy, the uncontradicted evidence being that the plaintiff received an injury in the accident here involved. See Exhibit A attached hereto.

"3. The verdict of the jury is invalid and erroneous insofar as it fails to award any general damages for pain and suffering proved by the uncontradicted evidence.

"4. The verdict of the jury is invalid and erroneous in that the jury disregarded the instructions of the Court with regard to damages.

"5. The verdict of the jury is invalid and erroneous in that the award of special damages is inadequate and contrary to the evidence and in that there is no award of general damages, and the ver-

and finds the same without merit for the reasons hereinafter given.

■ The Court heard all of the evidence and made careful notes upon the same and would have been surprised if the jury had found any general damages, except possibly a nominal sum. A verdict is not to be set aside unless substantial prejudice was suffered by the moving party, and the evidence and inferences to be drawn therefrom are to be viewed in the light most favorable to the verdict.[3]

Plaintiff in his memoranda cites general authorities which hold it error for a jury to find special damages for personal injuries and find no general damages, and which hold that the Court has no power to allow an additur.[4] The authorities cited, which grant a new trial for failure of the jury to award general damages where special damages have been awarded, are not in point because in none of them did the evidence justify a finding that the Plaintiff suffered no personal injury whatsoever, as in this case.

In Pia v. Rapozo,[5] a case cited and attempted to be distinguished by Plaintiff, the Hawaii Supreme Court on appeal said (in a paternity proceeding in which the Plaintiff had testified and the Defendant had refused to testify on grounds of privilege against self-incrimination and the trial court had still given judgment for the Defendant) where Plaintiff sought a new trial on the ground that the Plaintiff's testimony was allegedly uncontradicted:

"If the evidence is of an unsatisfactory nature, even though the opposite party offers no evidence, it cannot be said as a matter of law that the burden of proof has been sustained * * *."

\* \* \* \* \* \*

"A number of cases held that although witnesses are not contradicted, a jury may disregard their testimony if they honestly regard it to be unreliable." 43 Haw. at pages 200, 201.

That is exactly the situation in this case, even if the testimony of the Plaintiff and the medical experts as to the alleged existence of a personal injury can be considered as uncontradicted.

Here the evidence showed that the Plaintiff, riding by himself on a motorcycle which had an extra seat behind the rider or a frame used as a seat, had stopped at a red light at an intersection and the Defendant had stopped his automobile behind Plaintiff's motorcycle at a distance of from three to five feet therefrom, and the Defendant's automobile thereafter moved forward slightly and lightly bumped the rear end of Plaintiff's motorcycle, bending the back part of this light frame and the back fender of the motorcycle.

The Defendant in his testimony explained that, when he stopped, the sun was shining on his windshield and he

---

dict is therefore inadequate, incomplete and contrary to the Court's instructions on damages.

"6. There is not a scintilla of evidence to support the jury's verdict as to damages."

Exhibit "A" referred to in Ground No. 2 is a transcript of a single question and answer, picked out of the context of his entire testimony, testified to by Dr. Rowlin L. Lichter, an expert called by the Defendant, as follows:

"Q. (By Mr. Ingman) Do you have any reason to think Mr. Essenberg was faking injury when you examined him?

"A. Any reason to believe it? In what sense? I don't mean to be picayune, but in what sense do you mean 'faking'? He was not physically trying to fake it, I will say that, because the physical examination was essentially negative. Then I certainly do believe that Mr. Essenberg received an injury, but I believe the magnitude has been exaggerated."

3. 10 Cyc.Fed.Proc. secs. 34.04, 34.08; 6 Moore's Fed.Prac. (2d ed.) p. 3819; Cleland v. Peters, D.C.W.D.Pa.1947, 73 F. Supp. 769.

4. Among others Plaintiff cites:
   Annotation in 20 A.L.R.2d 276 et seq.; 6 Moore's Fed.Prac. (2d ed.) pp. 3821 et seq.; 6 Id. pp. 3752 et seq.; Wirz v. Wirz, 1950, 96 Cal.App.2d 171, 214 P. 2d 839, 15 A.L.R.2d 1129, 1133; Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 126 A.2d 323, 62 A.L.R.2d 1179, 1191.

5. Pia v. Rapozo, 1959, 43 Haw. 199.

was unable to see the motorcycle ahead; that he heard a gunning of the motorcycle and, assuming that it had started, released his brake and, there being a slight down-hill incline at that point, his car rolled forward, lightly bumped the rear of the motorcycle, and was instantly stopped by applying his brakes.

The Court found Defendant's action, under these admissions to be clearly negligent, and rejected Defendant's contention that Plaintiff's alleged gunning of the motorcycle's engine without causing it to move ahead constituted contributory negligence, and therefore directed a verdict for the Plaintiff.

However, the uncontradicted testimony shows, among other things, the following. At the time of the impact the Plaintiff was sitting in a relaxed manner on his motorcycle. The impact moved his motorcycle not more than six inches forward and did not knock him off his motorcycle or cause the vehicle to fall down. Plaintiff immediately propped the motorcycle up, got off it and walked back to Defendant's car, talked to him about the accident, and made no claims of any injury at the time. Plaintiff himself said that he was not hit on the back by anything at the time and felt no pain until a couple of days later, when his back allegedly started to ache. Plaintiff and Defendant agreed to drive their respective vehicles to the Montgomery Motors about one and a quarter miles away for an estimate of repairs. Plaintiff drove his motorcycle to that place and Defendant drove his car there and they both consulted with Jimmy Montgomery, an official of Montgomery Motors, who gave them an oral estimate of the damages. Both Plaintiff and Defendant testified that the estimate given by Jimmy Montgomery was around $20 to $25 damages which Defendant agreed to have his insurance company pay. Defendant testified without contradiction that, after the estimate, he asked Plaintiff if there was anything else and Plaintiff said "No". The jury could certainly conclude from this that, if Plaintiff had really been injured, he would have said

something about it under these circumstances, and hence could infer therefrom and from other circumstances (some of which are hereinafter mentioned) that Plaintiff was not injured at all.

The evidence is uncontradicted that the Plaintiff made no complaint to anyone concerning alleged pain or personal injuries until December 6, 1960, a period of seventeen days after the accident. On December 6 he called on an attorney, Mr. Ingman, who immediately thereafter referred him to a physician, whom I shall refer to as "Dr. W.", who testified as an expert in Plaintiff's behalf at the trial. During this 17-day period, and indeed until the trial, the Plaintiff, although a marine and entitled to free medical advice and treatment by the United States Armed Services, and although he claimed at the trial to have suffered severe pain whenever he stood or sat for one to one and a half hours, day after day, made no complaint to anyone in his outfit, sought no medical advice or treatment from them for this alleged injury, had not lost a day of work from his alleged injury, and had continued to do his regular duties without change or interruption.

According to the Plaintiff and his expert witness, Dr. W., Plaintiff was examined by the latter, gave the history of his alleged injury, and was told by Dr. W. to treat himself by taking hot baths and exercising, which Plaintiff claims he did. Thereafter, as stated, the Plaintiff still failed to seek any additional medical treatment from his own outfit or even from Dr. W. for a period of four months and twelve days, to April 18, 1961, on which day he was again examined by Dr. W., but not treated. Dr. W. also examined the Plaintiff on two or three other occasions in May and the only reasonable inference to be drawn from the testimony as to these examinations is that, with the possible exception of the first one, they were solely for the purpose of preparation for trial and not for treatment. This would rule out any charge for such services by Dr. W. as special damages.

As to the first examination by Dr. W., the fact that the Plaintiff did not consult a physician until after he had consulted his attorney, together with other circumstances — including Plaintiff's statement that he decided to assert a personal injury claim against the Defendant about two weeks after the accident, *after* he had seen his attorney— would have justified a jury in finding the the the Plaintiff really went to Dr. W., even on this first occasion, to prepare his case for suit and trial, rather than for treatment.

Dr. W., it is true, testified to alleged subjective and objective symptoms of the Plaintiff, tending to indicate, according to Dr. W., a back injury of the Plaintiff in the right lumbar region, including a large hematoma, as he called it. However, a physician called as an expert witness by the Defendant, referred to hereinafter as "Dr. L.", testified, among other things, that any physical or so-called objective indications testified to by Dr. W. were practically a medical impossibility and that a report prepared by Dr. W. purporting to describe the injury was "medical gibberish." If the jury believed Dr. L., they would be justified in entirely disregarding the testimony of Dr. W. as to the existence and nature of any alleged injury, as well as the Plaintiff's testimony as to the alleged symptoms and injury. Moreover, there were other circumstances which, with the foregoing, would have justified a jury in disregarding entirely Dr. W.'s testimony, including, among others, the fact that Dr. W. was a rather elderly physician, belonged to no medical specialty groups, societies or boards, had no regular office, nurse or secretary, and kept no regular office records, but occasionally used the offices of the Drs. Bell; etc.

Although claiming a permanent back injury, Plaintiff admitted that a few days before the trial he had taken a marine's fitness test requiring him, among other things, to run three miles in thirty-six minutes. Although Dr. W. testified that Plaintiff, in his opinion, was suffering from a permanent back injury, he also said that such injury would not be apparent from external inspection by an ordinary layman, but would require a person skilled in palpation like himself to detect the same. Plaintiff did not offer the alleged injured back for inspection by the jury. This testimony tended to throw additional doubt on the Plaintiff's claim.

The evidence offered by Plaintiff also contained other contradictions, improbabilities and weaknesses, which could reasonably have influenced the jury to discredit Plaintiff's testimony and decide that Plaintiff had not been injured at all. For example: although Plaintiff said that he did not tell Dr. W. that he had been hit on the back in the accident, Dr. W. said that Plaintiff had, and that Plaintiff had told him Plaintiff had fallen off the rear end of the bike. On cross-examination, Plaintiff testified as follows:

"Q. You said on direct examination that you had received no personal injury at the time of the accident?

A. Yes."

Both Dr. W. and Plaintiff were unusually vague and inaccurate as to dates, periods of time, and in other respects.

On the other hand, as generally tending to disprove Plaintiff's alleged permanent back injury, Dr. L. testified, among other things, to the following. He examined Plaintiff at the request of Defendant about December 24, 1960, he found nothing wrong, no evidence of pain but, on the contrary, evidence to suggest that there was no pain. If there had been a major muscle tear, as testified by Dr. W., the Plaintiff would not have been able to go to work. The type of injury contended for could not produce a hematoma or lump of the size and shape described by Dr. W. He had never seen a patient who could continue working with that much blood in the muscle (referring to the amount of hematoma testified to by Dr. W.). Dr. W. had spoken in "unusual" medical

terms in connection with this accident and Dr. W.'s report on the accident was "medical gibberish."

It is clear, from an evaluation of Dr. L.'s entire testimony, that any diagnosis which would in any way assume an injury caused by the accident was necessarily based on subjective testimony furnished by the Plaintiff himself. If the jury were justified in rejecting Plaintiff's testimony at the trial, they would likewise be justified in rejecting what he told Dr. L. as a basis for such diagnosis.

Finally, from the X-rays, Dr. L. testified that Plaintiff appeared to have a mild deformity of a congenital nature —the left leg being a little longer than the right leg—and that the poor posture of the Plaintiff could cause back pain.

The Plaintiff reluctantly admitted that, after the accident, he had sought and received from the Military medical treatment for a broken hand about February 6, 1961. Plaintiff testified at the trial, without any rational explanation therefor, that he broke his hand because he had punched a solid brick wall, but he admitted, and his medical record showed, that when he reported to the medical officer of his outfit concerning this broken hand, he told the medical officer that he had fallen down a flight of stairs and broken his hand trying to break his fall. He attempted to explain this to the jury by stating that he had told an untrue story about a fall which never happened because he figured that if he told them that he had fallen downstairs he would have no trouble. The jury could well have found that his story to the medical officer was true and that he had fallen down the stairs, which could well have given rise to injuries and pains which he claimed were attributable to the accident here in question.

■ The foregoing and numerous other circumstances were such that the jury would be justified in finding, as the Court believes they did, that Plaintiff had not been injured at all by the accident, that his visits to Dr. W. and any services of Dr. W. were solely for purposes of preparation for suit and trial and not for bona fide treatment, and that therefore no general or special damages for personal injuries had been suffered by Plaintiff.

■ Much stress is laid by Plaintiff's attorney on one small portion of Dr. L.'s testimony in which, in answer to a question as to whether he believed that Plaintiff was faking an injury, Dr. L. said in substance that he did not believe that Mr. Essenburg was physically trying to fake; that he did believe that Mr. Essenburg had received an injury, but he believed that its magnitude was exaggerated.[6] This was an opinion, and, even though offered by the Defendant's own expert witness, was not binding on the jury.[7] There is nothing in the record or testimony to show that Dr. L. had had the benefit of all the testimony throwing doubt on Plaintiff's testimony and injury which was given to the jury through witnesses including Plaintiff himself, so that it could well be that Dr. L. gave more credit to the Plaintiff's subjective statements of the history of the accident, his aches and pains, etc., than the jury did. In the context of the entire case and of Dr. L.'s entire testimony, this statement, standing alone, is insufficient to justify the granting of a new trial. It was for the jury, not Dr. L., to make a final determination as to whether Plaintiff's subjective testimony was sufficient to prove that Plaintiff had sustained any injury at all.

■ One other matter needs to be noticed. Plaintiff offered evidence to prove alleged special damages to the motorcycle for repairs in an amount totaling some $121.15. This included paint and a paint job, a new panel, a

---

6. See Note 2 for the exact words of Dr. L.

7. Instructions to Jury given by the Court, derived from Civ. 9 and 10, 22 F.R.D. 137 to 138.

replaced brake drum, a new rear stand, labor, etc. The jury awarded special damages only, in the amount of $61.20. In the light of the estimate of $20 to $25 given originally by Jimmy Montgomery to both Plaintiff and Defendant, as testified to by both of them (although denied by Montgomery), plus the claimed minor nature of the actual damage to the motorcycle which Defendant contended was shown by the evidence, Defendant's attorney attacked even these special damages as fraudulent and excessive, in his address to the jury. It seems clear to the Court, in the light of the foregoing and all the other circumstances of this case, that the jury rejected, not only in its entirety the Plaintiff's claim of any personal injury, but in addition, rejected in part Plaintiff's claim for damages to the motorcycle. The evidence and circumstances were sufficient in the Court's opinion to justify a jury in so doing.

Hence the Court rejects as unsound and unjustified every ground of the Motion for a New Trial, and denies the same.